IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SATURN OF MEMPHIS, INC.,

    Plaintiff,　　　　　　　　　　　　Civil Action  No.

v.

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,　　　　　　　**JURY DEMANDED**

    Defendant.

## COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES

Comes the Plaintiff, Saturn of Memphis, Inc. ("Saturn of Memphis"), and for its complaint against the Defendant, alleges and pleads as follows:

### PARTIES

1. Saturn of Memphis, Inc. ("Saturn of Memphis") owns and operates an automobile dealership at 2420 Covington Pike in Memphis, Shelby County, Tennessee.

2. On information and belief, Universal Underwriters Insurance Company ("Universal") is an insurance company organized under Massachusetts law that maintains its principal place of business in Overland Park, Kansas.

### JURISDICTION AND VENUE

3. The Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Saturn of

Memphis and Universal, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

5. In 2007, Saturn of Memphis purchased insurance policy number 263550 from Universal (hereinafter referred to as the "Policy"). The Policy covered multiple risks and was effective from July 1, 2007 through July 1, 2008. The Policy is too voluminous to exhibit to this Complaint but, on information and belief, Universal possesses a copy of the Policy.

6. Coverage Part 380 of the Policy covered losses resulting from, among other things, certain acts of dishonest employees, as well as certain expenses incurred in connection with the investigation of a claim.

7. From approximately February 1, 2005, through October 15, 2007, Saturn of Memphis employed Shawn L. Cunningham as Parts Manager—the employee responsible for ordering parts and supplies used by Saturn of Memphis's Service Department. In his capacity as Parts Manager, Cunningham was charged with the responsibility of monitoring the types and quantities of shop supplies and parts actually used by Saturn of Memphis, ascertaining the best prices for non-GM parts and supplies, and ordering replacement parts and supplies in the lowest quantities sufficient to meet Saturn of Memphis's needs.

8.      Beginning on a date unknown to Saturn of Memphis, Cunningham devised and executed a dishonest scheme to deprive Saturn of Memphis of money and/or other property by causing Saturn of Memphis to pay invoices for excessive quantities of parts and supplies at inflated prices.  In many cases, the "suppliers" reflected on the subject invoices paid kickbacks to Cunningham in the form of gift cards and travelers checks that, by Cunningham's own admission, totaled at least $400-$500 per month.  Saturn of Memphis has located some of the products invoiced by the subject "suppliers," but it appears that many of the products it paid for were not received.

9.      Examples of Cunningham's conduct that form the subject matter of this action are as follows:

   a.   Saturn of Memphis uses a part known in the industry as a 3-inch Ro Loc only twice per month (approximately twenty-four times per year).  These parts are readily available for as low as $0.94 per unit.  Cunningham caused Saturn of Memphis to pay for 1,700 3-inch Ro Locs (a 70-year supply) at an average price of $4.85 per unit (more than five times the market price).  Moreover, the majority of the units paid for by Saturn of Memphis were never received.

   b.   On average, Saturn of Memphis uses approximately 50 wire ties per month, which are widely available for approximately $0.08 per unit. Cunningham caused Saturn of Memphis to pay for more than 30,000 wire ties (a 50-year supply) at an average price of $0.78 (almost ten times the market price).  Almost 25,000 of the wire ties paid for by Saturn of Memphis were not received.

  c. HNBR O-ring kits are readily available for $6.20 each. Cunningham caused Saturn of Memphis to purchase several HNBR O-ring kits for $999.96 each (more than 160 times the market price).

  d. Valve stems are readily available for as low as $0.16 each. Cunningham caused Saturn of Memphis to purchase thousands of valve stems for an average price of $3.98 per unit.

  e. During Cunningham's tenure, Saturn of Memphis did not use wire connectors. Nonetheless, Cunningham caused Saturn of Memphis to pay for thousands of wire connectors, _e.g._, heat shrink connectors, quick connectors, quick splice terminal connectors, and spade terminal connectors, at grossly inflated prices. Saturn of Memphis never received the vast majority of the connectors for which it paid.

  f. During Cunningham's tenure, Saturn of Memphis did not regularly use cutoff blades. Yet, Cunningham caused Saturn of Memphis to pay for over 4,000 cutoff blades at more than double the market price. Saturn of Memphis received only 1,380 cutoff blades, for which it has no use.

  g. With respect to air filters, brake pads and brake rotors, Cunningham made some purchases at slightly less than market price, but the items received were of such inferior quality that they have no value to Saturn of Memphis.

10. Cunningham's actions caused Saturn of Memphis to sustain a loss of at least $379,856.32.

11. The loss caused by Cunningham's conduct as described herein is a type of loss covered under the Policy.

12. During all relevant times, Saturn of Memphis was a Named Insured entitled to indemnification under the terms of the Policy.

13. During all relevant times, Cunningham was an Employee as defined by and used in the applicable provisions of the Policy.

14. Saturn of Memphis first discovered the loss caused by Cunningham on or after October 15, 2007, at which time Saturn of Memphis placed Cunningham on suspension.

15. Saturn of Memphis has complied with all applicable terms of the Policy that impose any duties or obligations on it as an insured under the Policy.

16. Pursuant to communications with Universal, on or about February 1, 2008, Saturn of Memphis submitted formal documentation of its claim to Universal in the form of a detailed Proof of Loss, together with voluminous exhibits. A true and correct copy of the aforementioned Proof of Loss (without exhibits) is attached hereto as **Exhibit A** and incorporated herein by reference.

17. To date, Universal has never formally admitted nor denied coverage under the Policy, nor has it paid any sums to Saturn of Memphis in connection with the subject claim.

18. Universal's refusal to pay Saturn of Memphis' insurance claim constitutes of breach of the insurance contract.

WHEREFORE, PREMISES CONSIDERED, Saturn of Memphis prays that the Court:

a) empanel a jury to decide all contested issues of fact as provided in Fed.R.Civ.P. 38 and 39(a); and

b) enter judgment in favor of Saturn of Memphis declaring the respective rights and obligations of the parties under the Policy; and

c) enforce the terms of the Policy by awarding Saturn of Memphis a money judgment against Universal for the amount of its covered loss, plus pre-judgment interest and post-judgment interest; and

d) assess the costs of this action against Universal, including all discretionary costs to which Saturn of Memphis may be entitled; and

e) award Saturn of Memphis any other and further relief to which it may be entitled.

Respectfully submitted,

s/ Douglas A. Black
Douglas A. Black (#11412)
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN  38120
(901) 537-1000
Counsel for Saturn of Memphis, Inc.